# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ALABAMA
### SOUTHERN DIVISION

HARTFORD CASUALTY      :
INSURANCE COMPANY, etc.,

                        :

    Plaintiff,

                        :

vs.                               CA 08-0604-CG-C

                        :

MARK IV CONSTRUCTORS,
INC., etc., et al.,            :

    Defendants.

## REPORT AND RECOMMENDATION

This cause is before the undersigned for entry of a report and recommendation, pursuant to 28 U.S.C. § 636(b), on the defendants' corrected motion to dismiss (Doc. 9; *see also* Doc. 10), and the response of Hartford Casualty Insurance Company ("Hartford") to the defendants' corrected motion (Docs. 11 & 12).[1] Upon consideration of the contents of the foregoing pleadings,[2] with attachments, the undersigned recommends that the Court

---

[1]    Hartford was ordered to file its response to the corrected motion to dismiss on or before December 4, 2008. (Doc. 8) Plaintiff filed its response on November 25, 2008. (Docs. 11 & 12)

[2]    The undersigned extended to the defendants the opportunity to file a reply not later than December 11, 2008. (Doc. 8) However, the undersigned finds it unnecessary to await the defendants' reply before entering the instant report and recommendation on the pending

**GRANT** the defendants' motion to dismiss and abstain from deciding this exoneration of surety action in favor of the parallel state action presently pending in the Circuit Court of Baldwin County, Alabama.

## FINDINGS OF FACT

1.      On February 18, 1980, Mark IV Constructors, Inc. ("Mark IV") and Richard M. Jenkins ("Jenkins") "executed a General Indemnity Agreement (GIA) in favor of Hartford in which they promised to exonerate, defend and hold Hartford harmless from any loss, cost or expense which might result from the issuance of any bond on behalf of Mark IV." (Doc. 1, ¶ 6; *see also* General Indemnity Agreement) Pursuant to the terms of the GIA, Mark IV and Jenkins "also agreed to deposit with Hartford, upon demand, money, property, or other security in a form and amount acceptable to the Hartford pending a determination of the merits of any claims under any bond issued by Hartford on behalf of Mark IV." (Doc. 1, ¶ 7)

> V
>
> The Indemnitors will Idemnify the Surety against any and all liability, losses and expenses of whatsoever kind or nature (including but not limited to interest, court costs and counsel fees) which the Surety may sustain or incur (1) by reason of having executed any Bond issued hereunder, (2) by reason of the failure of the Principal or any of the other Indemnitors to perform or comply with the covenants and conditions of this

_____

motion to dismiss.

Agreement or (3) in enforcing any of the covenants or conditions of this Agreement. The Indemnitors will pay the Surety for all such losses or expenses as soon as liability therefor is asserted or exists, whether or not the Surety has made payment. Such payment shall be equal to the amount of the reserve set by the Surety; provided that in the case of any claim, demand or suit upon any of the Bonds, the Indemnitors may, subject to the provisions of Section VII, request the Surety to litigate or defend the matter.

.    .    .

VII.

The Surety shall have the right to adjust, settle or compromise any claim, demand, suit or judgment upon any of the Bonds, unless the Indemnitors (1) shall request the Surety to litigate such claim or demand, or to defend such suit, or to appeal from such judgment, and (2) shall deposit with the Surety, at the time of such request, cash or collateral satisfactory to the Surety in kind and amount, to be used in paying any judgment rendered or that may be rendered, with interest, costs, expenses and counsel fees, including those of the surety.

(*See* Doc. 1, Exhibit A, General Indemnity Agreement)

2.      At the request of Mark IV, sometime in 1998, "Hartford issued a payment bond on its behalf and in favor of the Baldwin County Board of Education with respect to the construction of the Gulf Shores High School in Gulf Shores, Alabama." (Doc. 1, ¶ 5; *see also* Doc. 12, at 2 (noting Gulf Shores High School was built in late 1998 through 1999))

3.      In September of 2000, McCorvey Construction Company filed a civil action in the Circuit Court of Baldwin County, Alabama "against Mark

3

IV and Hartford for non-payment of labor and materials supplied to Mark IV

for use and incorporation in the Gulf Shores High School project[.]" (Doc. 1,

at ¶ 8; *see also* Doc. 10, at 2) By all accounts, Hartford filed a motion to

dismiss in the Baldwin County action in September of 2000 but otherwise, up

until September 27, 2007,[3] relied upon Mark IV and Jenkins "to successfully

defend against the claims of the plaintiff[.]" (Doc. 10, at 2) While plaintiff did

not file another pleading in the state-court action until September 27, 2007, it

appears that it was actually in August of 2007 that attorneys for Mark IV

advised Hartford that they would no longer continue to represent its interest in

the state-court litigation. (*See* Doc. 12, at 2-3 ("Hartford initially requested that

Mark IV undertake its defense in the State Court action, and until August of

2007, Hartford was represented by Mark IV's attorneys (Byron Brackin with

Brackin, McGriff & Johnson in Foley, Alabama). However, in August of 2007

the Brackin firm advised Hartford that it would not continue to represent its

interest in the litigation; accordingly, Hartford has engaged the undersigned

---

[3]     On this date, Hartford filed an answer, cross-claim and third-party complaint.
(Doc. 10, at 2 ("In its cross-claim against defendant Mark IV Constructors and in its third[-]party
complaint against Richard Jenkins it seeks the same relief requested in this case[.]"); *see also*
Doc. 12, at 3 ("On September 27, 2007, Hartford filed a Cross-claim against Mark IV, and a
separate Third-party action against the Jenkins. Both pleadings asked the Court to enter a
matching judgment in favor of Hartford against the principal and the individual indemnitors in
the event the plaintiff (McCorvey) should recover a judgment against the Hartford.")）

4

counsel."))

4.      On September 4, 2008, Hartford filed a motion to enforce collateral demand in the Circuit Court of Baldwin County, Alabama. (Doc. 10, Attachment 1)

> HARTFORD CASUALTY INSURANCE COMPANY [], a defendant and third-party plaintiff . . . hereby requests and moves the Court to require defendant, Mark IV Constructors, Inc., and third-party defendants, Richard M. Jenkins and Shirley Faye Jenkins, to deposit collateral with Hartford in the amount of One-Hundred Sixty Thousand and no/100 Dollars ($160,000.00) pending final disposition of the claims asserted by plaintiff, McCorvey Construction Corporation, in this case. This Motion is supported by the pleadings, the Affidavit of Laura Mahley, the provisions of the General Indemnity Agreement dated February 18, 1980, and a separate Memorandum Brief.

(*Id.*) This motion was denied by the trial court. (*See* Doc. 10, at 2)

5.      On October 14, 2008, Hartford brought this exoneration action, based on diversity jurisdiction, against Mark IV and Jenkins. (Doc. 1) The defendants filed their corrected motion to dismiss on November 14, 2008 (Doc. 9) and this motion was joined on November 25, 2008 (Docs. 11 & 12). In responding to the defendants' motion to dismiss, plaintiff stated the following: "To the extent Hartford's claims for exoneration are duplicated in the suit filed by McCorvey Constructors in the Circuit Court of Baldwin County, Hartford proposes to eliminate each duplication by filing of the

Amendment attached as Exhibit 'A'." (Doc. 11, ¶ 5) Attached Exhibit A is

Hartford's amended cross-claim and third-party complaint which indicates, on

its face, that it was filed in the Circuit Court of Baldwin County, Alabama on

November 25, 2008 (Doc. 11, Exhibit A, at 2); however, plaintiff indicates in

its memorandum in opposition to the motion to dismiss that it has not filed this

document but is "prepared to file" same (Doc. 12, at 2 n.1 ).  Although it is

somewhat unclear exactly what the plaintiff is representing to this Court, the

undersigned takes from the foregoing that plaintiff will file the following

pleading in the Circuit Court of Baldwin County, Alabama should this Court

deny the defendants' motion to dismiss (*see* Doc. 12, at 1-2 ("Hartford submits

that the Motion to Dismiss should be overruled, because its Complaint states

a proper claim upon which relief can be granted, and because Hartford's

exoneration claims will be pursued only in this Court if defendants' Motion is

overruled and Hartford is allowed to prosecute its claims in this action."); *but*

*cf. id*. at 3 ("Hartford's claims for equitable relief and for the remedy of

exoneration have been dismissed from [the] State Court action.")):

> Defendant, Cross-claimant, and Third-party Plaintiff, HARTFORD CASUALTY INSURANCE COMPANY [] hereby amends its Cross-claim and Third-party claim filed on September 27, 2007, as follows:

> 1.    By deleting from the Cross-claim Count II,

denominated "exoneration" and

      2.     By deleting from the Third-party claim all references to exoneration and to requiring the third-party defendants to deposit collateral pending final disposition of this action.

      Hartford's claims for a judgment in an amount equal to any judgment obtained against it by plaintiff McCorvey in this action shall remain and are unaffected by this Amendment.

(Doc. 11, Exhibit A)

## CONCLUSIONS OF LAW

1.     "'Federal courts are courts of limited jurisdiction.'" *Federated Mut. Ins. Co. v. McKinnion Motors, LLC,* 329 F.3d 805, 807 (11th Cir. 2003), quoting *Burns v. Windsor Ins. Co.*, 31 F.3d 1092, 1095 (11th Cir. 1994). In order for a federal court to exercise diversity jurisdiction, the amount in controversy must exceed $75,000, exclusive of interest and costs, and the action must be between citizens of different states.  28 U.S.C. § 1332(a)(1). In this particular case, it is clear that this Court may exercise diversity jurisdiction because the parties are diverse from each other and Hartford seeks an order from this Court requiring the defendants to "deposit collateral, money, or other security in the amount of One Hundred Sixty Thousand and no/100 Dollars ($160,000.00) pending final disposition of McCorvey Construction Corporation's claim." (*See* Doc. 1, ¶ 9) In truth, the defendants implicitly

admit that this Court may exercise diversity jurisdiction in this action while at the same time implicitly contending that this Court should abstain from exercising jurisdiction over the claims in this case in favor of the parallel litigation in the Circuit Court of Baldwin County, Alabama. (*See* Doc. 10, at 3 & 3-4 ("'Where a Federal Court is asked to interfere with pending state court proceedings it must proceed with caution, taking into account general considerations of federalism and, in particular, the likelihood of seriously disrupting the legitimate functioning of the judicial system of the state.' . . . Hartford has waited over eight years to assert its claim in this court. It could have removed the entire state court proceeding to this court in September, 2000. It has only instituted this action after failing to get the desired result in state court. This court is not a backstop for state court. . . . Hartford is adequately protected by its contract with these defendants and its presence and its pleadings in the state court proceedings. No relief should be granted in this action.")) Given the manner of plaintiff's response to the motion to dismiss, along with the action it purports to take (or has taken) in the parallel state-court case, Hartford too has implicitly admitted that the question for this Court is whether to abstain in favor of the pending state-court litigation.  (*See, e.g.,* Doc. 12, at 5 ("If allowed to maintain this action Hartford believes that all

issues raised in its pleading can be swiftly and efficiently addressed. Enforcement of the surety's rights of exoneration will allow the underlying case to proceed without Hartford having to take an active role. Accordingly, principles of judicial economy should weigh in favor of allowing Hartford to pursue enforcement of its rights in the forum of its choosing."))

2.      The abstention principles set forth by the Supreme Court of the United States in *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976) and *Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp.,* 460 U.S. 1, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983) guide this Court's determination of whether to grant the moving defendants' motion to dismiss this action and abstain in favor of the parallel state-court action under principles of comity and federalism. *See Ambrosia Coal & Construction Co. v. Pages Morales*, 368 F.3d 1320, 1330 (11th Cir. 2004) ("[W]e hold that [the] *Colorado River* analysis is applicable as a threshold matter when federal and state proceedings involve substantially the same parties and substantially the same issues.").

3.      "*Colorado River* addresses the circumstances in which federal courts should abstain from exercising their jurisdiction because a parallel lawsuit is proceeding in one or more state courts." *Ambrosia Coal &*

*Construction Co.*, 368 F.3d at 1327.

The Court [in *Colorado River*] found that abstention was not appropriate under the traditional abstention doctrines, which involve "considerations of proper constitutional adjudication and regard for federal-state relations[.]" Nevertheless, the Supreme Court acknowledged that principles other than these traditional abstention doctrines might permit federal courts to abstain from exercising otherwise proper jurisdiction "in situations involving the contemporaneous exercise of concurrent jurisdictions[.]" "These principles[,]" the Court explained, "rest on considerations of wise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation."

For example, when multiple federal district courts might contemporaneously litigate concurrent jurisdictions, although "no precise rule has evolved, the general principle is to avoid duplicative litigation."

This general principle does not apply, however, when the duplicative litigation arises between state and federal courts. As the Supreme Court recognized, "[g]enerally, as between state and federal courts, the rule is that the pendency of an action in the state court is no bar to proceedings concerning the same matter in the Federal court having jurisdiction[.]" Federal courts have a "virtually unflagging obligation to exercise the jurisdiction given them." A policy permitting federal courts to yield jurisdiction to state courts cavalierly would betray this obligation. Thus, federal courts can abstain to avoid duplicative litigation with state courts only in "exceptional" circumstances.

Without fashioning a bright-line test for determining when the existence concurrent state and federal cases warrants federal court abstention, the Supreme Court discussed several circumstances that district courts may consider. It noted that "the court first assuming jurisdiction over property may exercise that jurisdiction to the exclusion of other courts." It further

remarked that a federal court may consider "the inconvenience of the federal forum, the desirability of avoiding piecemeal litigation, and the order in which jurisdiction was obtained by the concurrent forums." Finally, the Supreme Court cautioned that "[o]nly the clearest of justifications will warrant dismissal" of the federal court action.

*Id*. at 1328-1329 (internal citations, ellipses and footnote omitted).

4.      In *TransSouth Financial Corp. v. Bell*, 149 F.3d 1292, 1294-1295 (1998), the Eleventh Circuit summarized *Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983) and set forth the following six factors which fall among those which a district court should consider in determining whether exceptional circumstances exist:

"(1) the order in which the courts assumed jurisdiction over property; (2) the relative inconvenience of the fora; (3) the order in which jurisdiction was obtained and the relative progress of the two actions; (4) the desire to avoid piecemeal litigation; (5) whether federal law provides the rule of decision; and (6) whether the state court will adequately protect the rights of all parties."

*Moorer v. Demopolis Waterworks & Sewer Board*, 374 F.3d 994, 997 (11th Cir. 2004), quoting *TransSouth, supra*; s*ee also Wilton v. Seven Falls Co.*, 515 U.S. 277, 285-286, 115 S.Ct. 2137, 2142, 132 L.Ed.2d 214 (1995) ("As it had in *Colorado River*, the Court [in *Moses H. Cone*] articulated nonexclusive factors relevant to the existence of such exceptional circumstances, including the assumption by either court of jurisdiction over a res, the relative

convenience of the fora, avoidance of piecemeal litigation, the order in which jurisdiction was obtained by the concurrent fora, whether and to what extent federal law provides the rules of decision on the merits, and the adequacy of state proceedings."); *Ambrosia Coal & Construction Co., supra,* 368 F.3d at 1331 ("In interpreting *Colorado River* and its progeny, this court has catalogued six factors that must be weighed in analyzing the permissibility of abstention, namely: (1) whether one of the courts has assumed jurisdiction over property, (2) the inconvenience of the federal forum, (3) the potential for piecemeal litigation, (4) the order in which the fora obtained jurisdiction, (5) whether state or federal law will be applied, and (6) the adequacy of the state court to protect the parties' rights."); *Lops v. Lops,* 140 F.3d 927, 942-943 (11th Cir. 1998) ("When a parallel state action pends, the Supreme Court has outlined six factors for federal courts to consider in determining whether to abstain and dismiss a federal action: (1) whether one of the courts has assumed jurisdiction over any property in issue; (2) the inconvenience of the federal forum; (3) the potential for piecemeal litigation; (4) the order in which the forums obtained jurisdiction; (5) whether federal or state law will be applied; and (6) the adequacy of each forum to protect the parties' rights."), *cert. denied,* 525 U.S. 1158, 119 S.Ct. 1068, 143 L.Ed.2d 71 (1999); *Noonan South,*

*Inc. v. Volusia County*, 841 F.2d 380, 381 (11th Cir. 1988) ("The [Supreme]

Court [in *Colorado River*] suggested that federal courts consider a number of

factors in determining the appropriateness of dismissal: (1) whether one of the

courts has assumed jurisdiction over property; (2) the inconvenience of the

federal forum; (3) the potential for piecemeal litigation; and (4) the order in

which the forums obtained jurisdiction. [] In *Moses H. Cone* . . . the Court

repeated the four factors listed in *Colorado River* . . . [and] mentioned two

additional factors: (5) whether federal or state law will be applied; and (6) the

adequacy of each forum to protect the parties' rights.").

> The decision whether to dismiss does not rest on a mechanical
> checklist, but on a careful balancing of the important factors as
> they apply in a given case, with the balance heavily weighted in
> favor of the exercise of jurisdiction. The weight of each factor
> varies on a case-by-case basis, depending on the particularities
> of that case. One factor alone can be the sole motivating reason
> for the abstention.

*Moorer, supra,* 374 F.3d at 997 (internal quotation marks and citations

omitted).

     5.     Under the exceptional-circumstances test, the undersigned notes

that federal law does not provide any rules of decision on the merits; rather, as

plaintiff itself has admitted (Doc. 12, at 3 & 4 ("Hartford has repeatedly

requested that the defendants honor their obligations as specified in the

General Agreement of Indemnity– and as provided at common law (*See Doster v. Continental Casualty*, 268 Ala. 123 (Ala. 1958)) to post collateral or other property so as to exonerate Hartford from liability to McCorvey. . . . A surety's right to be exonerated from liability is well established under Alabama law. As stated in 1958 by the Alabama Supreme Court [in *Doster, supra*] ['n]o principle of equity is more familiar, or more firmly established than that a surety, after the debt for which he is liable has become due, without paying, or being called on to pay it, may file a bill in equity to compel the principal debtor to exonerate him from liability by its payment, provided no rights of the creditor are prejudiced thereby . . . .['"])), this case will be decided solely by reference to Alabama law. *See, e.g.,  Hightower & Co., Inc. v. United States Fidelity & Guaranty Co.,* 527 So.2d 698, 703 n.1 (Ala. 1988 ("We note that a surety in Alabama has the right to stand on its contract and to exact compliance with its stipulations, which may not be extended by construction or implication beyond the precise terms of the agreement. . . . The contract of a surety, however, is to be construed according to the intent of the parties and the implied condition of good faith.").[4] An even more important consideration

---

[4]     The first of the six factors, as set out in *Ambrosia Coal & Construction Co., supra,* does not weigh in favor of abstention since neither this case nor the parallel state case are proceeding *in rem*; therefore, neither court has jurisdiction over property. *See* 368 F.3d at 1332. In addition, the second factor is neutral because this Court is just as convenient to the parties,

is that the parallel state case has been pending in the Circuit Court of Baldwin County, Alabama now for some eight years. In fact, Hartford has been a named defendant in that case for all eight years and has requested the very relief from that court that it now seeks from this Court.[5] The state trial court's denial of Hartford's motion to require Mark IV and the Jenkins to deposit collateral with Hartford in the amount of $160,000 establishes nothing beyond the fact that the state-court litigation has progressed much further than this litigation. Accordingly, the length of time the parallel case has been in the Circuit Court of Baldwin County, Alabama and the progression of that case, when combined with the other relevant factor that federal law will provide no rules on the decision on the merits, speaks volumes for abstention under the exceptional-circumstances abstention doctrine.

---

evidence and witnesses as is the Circuit Court of Baldwin County, Alabama. *See id*. The third factor is also neutral since "there is no indication that piecemeal litigation poses any greater waste or danger here than it does in the vast majority [of] federal cases with concurrent state counterparts." *Id*. at 1333. Finally, the sixth factor is neutral because there has been no suggestion that this Court would be unable to protect the rights of all parties. *See id*. at 1334 ("This factor will only weigh in favor or against abstention when one of the fora is inadequate to protect a party's rights."). However, the remaining two factors weigh in favor of abstention, particularly the fourth factor.

[5]     Hartford's proposal to withdraw its exoneration claims in the state-court action can have no impact on this Court's analysis because such action does nothing to lessen the impact of the undisputed fact that plaintiff has been involved in the state-court litigation, in some capacity, for the last eight years. It is not lost on this Court that the only reason Hartford is seeking to bring this action in federal court is because the state court denied its motion to enforce collateral demand.

## <u>CONCLUSION</u>

Therefore, it is recommended that the Court **GRANT** the defendants' motion to dismiss and abstain from proceeding to a judgment on the merits in this action in favor of the parallel proceeding in the Circuit Court of Baldwin County, Alabama (*see* Docs. 9 & 10).

The instructions which follow the undersigned's signature contain important information regarding objections to the report and recommendation of the Magistrate Judge.

**DONE** this the 2nd day of December, 2008.

 s/WILLIAM E. CASSADY
**UNITED STATES MAGISTRATE JUDGE**

**MAGISTRATE JUDGE'S EXPLANATION OF PROCEDURAL RIGHTS AND
RESPONSIBILITIES FOLLOWING RECOMMENDATION, AND
<u>FINDINGS CONCERNING NEED FOR TRANSCRIPT</u>**

l.      ***Objection***.  Any party who objects to this recommendation or anything in it must, within ten days of the date of service of this document, file specific written objections with the Clerk of this court.  Failure to  do so will bar a *de novo* determination by the district judge of anything in the recommendation and will bar an attack, on appeal, of the factual findings of the Magistrate Judge.  *See* 28 U.S.C. § 636(b)(1)(C); *Lewis v. Smith*, 855 F.2d 736, 738 (11th Cir. 1988); *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. Unit B, 1982)(*en banc*).  The procedure for challenging the findings and recommendations of the Magistrate Judge is set out in more detail in SD ALA LR 72.4 (June 1, 1997), which provides that:

> A party may object to a recommendation entered by a magistrate judge in a dispositive matter, that is, a matter excepted by 28 U.S.C. § 636(b)(1)(A), by filing a 'Statement of Objection to Magistrate Judge's Recommendation' within ten days after being served with a copy of the recommendation, unless a different time is established by order.  The statement of objection shall specify those portions of the recommendation to which objection is made and the basis for the objection.  The objecting party shall submit to the district judge, at the time of filing the objection, a brief setting forth the party's arguments that the magistrate judge's recommendation should be reviewed *de novo* and a different disposition made.  It is insufficient to submit only a copy of the original brief submitted to the magistrate judge, although a copy of the original brief may be submitted or referred to and incorporated into the brief in support of the objection.  Failure to submit a brief in support of the objection may be deemed an abandonment of the objection.

A magistrate judge's recommendation cannot be appealed to a Court of Appeals; only the district judge's order or judgment can be appealed.

2.      ***Transcript (applicable Where Proceedings Tape Recorded)***.  Pursuant to 28 U.S.C. § 1915 and FED.R.CIV.P. 72(b), the Magistrate Judge finds that the tapes and original records in this case are adequate for purposes of review.  Any party planning to object to this recommendation, but unable to pay the fee for a transcript, is advised that a judicial determination that transcription is necessary is required before the United States will pay the cost of the transcript.

  S/WILLIAM E. CASSADY
UNITED STATES MAGISTRATE JUDGE

17